[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried on July 22, 1982 in Cedarhurst, New York. They have resided continuously in this state since October 1982. There are three minor children issue of this marriage: David Pinke, born September 25, 1983; and Chelsey Pinke and Russell Pinke, twins born August 7, 1988.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The court has carefully considered the criteria set forth in §§ 46b-50, 46b-81, 46b-82, 46b-84 and 46b-62 Conn. General Statutes in reaching the decisions reflected in the orders that follow.
The parties have been married for approximately 18 years although they have lived separate and apart for approximately two years. The parties spent several years in counseling and marriage counseling to no avail.
The plaintiff is 45 years of age and in good health. During the course of the marriage she took on the conventional role of homemaker, caring for her husband and the three minor children. She has a B.S. in neuro-biology and a PhD in neuro-science.
The defendant is 47 years of age and in good health. He has a B.S. from Tufts College and a medical degree also from Tufts. He is a well-established ophthalmologist with a practice in Shelton, CT Page 3716 Connecticut. There is no question that the husband has worked hard to build up a successful practice. Up until the parties separated in January/February 1998, the defendant earned in excess of 1.1 million dollars per year. In 1998, the defendant had earnings of approximately $701,500 and, in 1999, the defendant claimed he had earnings of approximately $430,000.
One of the main issues in this matter was the value of the defendant's business. Each party had an expert evaluate the business. Both experts were knowledgeable and well-versed in their figures.
The wife's expert did not use the 1998-1999 figures because he could not determine any verification of the substantial decrease in earnings. There was much discussion about competition from optic-care and ambulatory/van services, initiated by competitors in the eye field. A serious consideration was the change in Medicare billing and reimbursement procedures. The defendant claimed, as a result of all these matters, the number of procedures he has performed has dropped off and the reimbursement of his procedures has decreased.
The husband's expert included the last two lower years for purposes of his evaluation. These lower figures certainly have an impact on his evaluation.
The wife's expert valued the practice at $2.3 million; the husband's expert used the figure of $965,800. The defendant himself used the figure of $1,002,000 on his financial affidavit.
In addition to the medical practice, the parties have assets in excess of $11,000,000 and over $2,000,000 in pension/profit-sharing plans.
The income from the husband's medical practice will provide the stream of income for the award of alimony and child support, regardless of the value of the practice and regardless of which opinion is believed.
The court believes there was some merit to a reduction in the husband's income as a result of the Medicare audit and the change in billing procedures. However, the substantial decrease the defendant would have the court believe appears to be a recently acquired income deficiency syndrome. Had the wife's expert used the 1997-1998 figures, his valuation might have been different, CT Page 3717 whereas the husband's expert put emphasis on the last two lower years. The court finds that as of 1996, the medical practice had a value of $2.3 million. As of the end of 1999, as a result of a questionable slack off on the part of the defendant, competition, Medicare billing and reimbursement procedures, the practice has dropped in value to one million dollars. There was some merit to the plaintiff's expert witness that he was not provided with all the material he requested. Some of the documents he requested were found in the file of the defendant's expert.
The wife's expert, Mr. Trugman, could not reconcile the downward trend of income and the dramatic decrease in income in the 1998-1999 period which occurred after the separation and after the pendente lite orders were entered. Although Mr. Trugman considered the 1998 and 1999 figures, he did not use them in his evaluation. Had Mr. Trugman used the 1999 figures, his evaluation would have been approximately $1.6 million ($1,588,264.00).
The husband's expert, Mr. Pia, used the 1997 through 1999 figures which included a $500,000 decline in revenues and he used 1999 as a base year. Had Mr. Pia emphasized the 1997 figures, his evaluation would have been approximately $1,044,000.00. Using Mr. Pia's analysis, the practice is worth less than the average salary earned by the defendant in the period in question.
The experts did not use the same years in arriving at their evaluations. This court can only conclude that the practice has a value of between one million and two million dollars. However, as previously indicated, this practice provides a stream of income with which to pay alimony and child support.
The defendant's earnings took a dramatic decrease following the commencement of this dissolution. In 1997, the defendant had earnings of approximately $1,185,000. The dissolution action was commenced in January 1998 and the wife vacated the marital home in April 1998. The defendant claimed earnings of approximately $701,500 for the year 1998 and earnings of approximately $430,000 for the year 1999. The defendant has an earning capacity in excess of $430,000. The defendant is a hard worker, characterized by his wife as a workaholic. Through his hard work the husband was able to build up a highly successful practice.
The parties jointly own the former marital home located at 85 North Racebrook Road, Woodbridge, valued at $1.7 million, mortgage-free. Both parties agree to sell this property. There is CT Page 3718 a qualified personal residence trust in connection with this home for estate planning purposes only.
The plaintiff purchased a home at 3 Crystal Terrace in Woodbridge valued at $595,000 with a mortgage of $466,869 and equity of approximately $128,140.
The defendant owns his medical building at 9 Cots Street, Shelton valued at $775,000 subject to a mortgage of $390,000 with equity of $385,000.
In addition, the parties have various stocks, bonds and money market accounts in excess of seven million dollars. The parties have IRA's, pension plans/profit-sharing plans in the amount of $2,052,000.
No purpose would be served by a review of all the evidence presented in this four day trial.
Unfortunately, the parties were unable to resolve their marital difficulties. The court declines to assess fault to either party for the breakdown of the marital relationship.
The court has carefully considered the appropriate statutory criteria including §§ 46b-81 and 46b-82 in reaching the decisions reflected in the orders that follow.
CUSTODY AND VISITATION
The parties entered into a stipulation regarding custody and visitation which the court has approved and annexes the agreement hereto.
REAL ESTATE DIVISION
 85 NORTH RACEBROOK ROAD, WOODBRIDGE, CONNECTICUT
 1. The parties shall cooperate to facilitate the orderly sale and disposition of the marital home located at 85 North Racebrook Road, Woodbridge, in accordance with Section 5 of their respective Qualified Personal Residence trust.
 2. This property shall be immediately listed for sale. The parties shall attempt to agree on a listing price in consultation with the listing broker. CT Page 3719
 3. From the gross proceeds of the sale of this real estate, the broker's commission, attorney's fees and usual closing costs including conveyance taxes shall be paid. The then remaining net equity shall be equally divided and distributed to the parties.
 4. The court shall retain jurisdiction over any disputes arising out of the sale of these premises.
 3 CRYSTAL TERRACE, WOODBRIDGE, CONNECTICUT
 1. The wife shall retain 3 Crystal Terrace, Woodbridge, Connecticut free from any claim of the husband. The wife shall be responsible for the mortgage, taxes, insurance and utility expenses and shall indemnify and hold the husband harmless from any liability thereon.
 2. Five years from date, the wife shall make reasonable efforts to refinance the property to remove the husband's name from the mortgage.
 9 COTS STREET, SHELTON, CONNECTICUT
 1. The husband shall retain 9 Cots Street, Shelton free and clear of any claim of the wife. The husband shall be responsible for the mortgages, taxes and insurance and shall indemnify and hold the wife harmless from any liability thereon.
UNALLOCATED AND CHILD SUPPORT
 1. During the lifetime of the wife and until the death of the husband, death of the wife, or her remarriage, commencing April 1, 2000 and until April 30, 2007, the husband shall pay to the wife as unallocated alimony and child support the sum of $18,000 per month payable in advance in two equal installments of $9,000 on or before the first and the fifteenth day of each month.
 2. Commencing May 1, 2007 and until the death of the husband, death of the wife or her remarriage, the sum of $14,000 per month payable in advance in two equal installments of $7,000 on the first and fifteenth of each month. CT Page 3720
 3. In the event alimony terminates for any reason while any of the children are still minors, these orders shall remain in effect until modified by a court hearing.
 4. The husband claims monthly expenses of $18,689 for one person, while the wife claims monthly expenses of $19,695.32 for herself and three children. Although the defendant claims he has drawn no salary since January 1, 2000, he has no outstanding bills and has a small liability of $5000. for various charge cards.
 5. The award of unallocated alimony and child support is based on the defendant's earnings of $430,000. per year. In the event the defendant's earnings return to his previous higher level, the unallocated award of alimony and child support is modifiable. Based on the previous years' tax returns, the defendant has an earning ability in excess of $430,000.
PROPERTY DIVISION
 1. The parties shall equally divide the proceeds from the sale of the oriental rug, currently on consignment.
 2. The wife shall retain title to the 1994 Mitsubishi montero motor vehicle.
3. The husband shall retain the wine collection.
 4. The wife shall retain the Bank Accounts and Securities Accounts solely in her name as set forth in the asset summary:
 Merrill Lynch $41759.38 Peoples Bank $ 1859.47 Schneider Securities $150000.00 Schwab Account $33308.00
 5. The wife shall retain all of her jewelry free from any claim by the husband, as well as her household furnishings and personalty.
 6. The husband shall retain his professional practice known as James R. Pinke, M.D., P.C., free and clear from any claim by the wife. CT Page 3721
 7. The parties shall equally divide their joint accounts as follows:
 Merrill Lynch approx. $82940. Schneider Securities " " $61,188.
 These accounts shall be valued as of the date of this decision.
 8. The Thermocell Technical Purchase Warrants shall be equally divided between the parties.
 9. The $125,000 shares of restricted Thermocell technical stock exercisable 3/1/00 shall be equally divided between the parties.
PROPERTY SETTLEMENT
 1. By way of a lump sum property settlement, the husband shall pay to the wife a lump sum amount of $3,460,000. (Three Million Four Hundred Sixty Thousand Dollars).
 2. The parties shall have 30 days to agree on how and from which accounts the assets are to be transferred. All assets shall be valued as of the date of this decision.
 3. In the event the parties are unable to agree, they shall return to Court for a hearing and orders thereon, as the Court shall retain jurisdiction over this matter.
IRA's, PENSION PLANS/PROFIT SHARING PLANS
 1. The parties have approximately $2,051,566.27 in IRA's and Pension Plans. There may also be another Pension Plan and/or Profit Sharing Plan not listed on the financial affidavits.
 2. The IRA's shall be equally divided between the parties. The date of valuation shall be the date of this Memorandum.
 3. The Pension Plans and Profit Sharing Plans and Trusts shall also be equally divided between the parties. The date of evaluation shall be the date of this Memorandum. CT Page 3722 The wife's interest in the Pensions and Profit Sharing Savings Plans shall be secured by means of a QDRO.
 4. It is the Court's intent that each party shall have approximately $1,025,000 Million each in retirement funds. The Court shall retain jurisdiction over any disputes arising out of the transfer of these funds. The Court shall retain jurisdiction over any disputes arising out of these QDRO's.
 5. The parties shall equally share the cost of preparing and finalizing the QDRO's.
MEDICAL COVERAGE
 1. The husband shall provide and maintain for the benefit of each child, all medical and hospitalization insurance coverage currently in effect until each child reaches the age of 19 years or sooner graduates from high school.
 2. Should the current medical and hospitalization insurance coverage no longer be available to the husband, then he shall maintain Blue Cross, Blue Shield, and CMS or equivalent, major medical, comparable to his current policy.
 3. The husband shall be responsible for and shall pay one half of any unreimbursed and uninsured medical, hospital or dental expense incurred by each of the minor children.
 4. The husband shall cooperate with the wife to enable her to obtain continuation coverage of the existing medical and hospitalization insurance plan. The husband shall provide the wife with any forms necessary to permit her to elect that coverage. The husband shall pay the first 12 months of said coverage. Thereafter the cost of said coverage shall be the responsibility of the wife. The wife shall be responsible for any unreimbursed expenses.
LIFE INSURANCE
 1. The defendant shall maintain and pay the premiums on a life insurance policy in the amount of $2 Million Dollars naming the plaintiff as irrevocable beneficiary thereon for so long as the defendant has an obligation for alimony CT Page 3723 and/or child support.
2. This provision shall be modifiable.
 3. It is the court's understanding that the defendant has such a policy in effect although not specifically set forth on his financial affidavit. The defendant claims an expense on his financial affidavit of $469.00 per month for life insurance.
 4. The defendant shall not encumber said policy so as to jeopardize the face value of the life insurance and the net benefit to the wife. The husband shall submit proof to the wife that said life insurance is in full force and effect on or before January 1 of each year.
CUSTODIAL ACCOUNTS
 1. The parties have custodial accounts/trusts for each child for educational expenses incurred by each child. The husband shall be named as a trustee on the account for the minor child, David Pinke and the minor child, Russell Pinke. The wife shall be named as a trustee on the account for Chelsey Pinke.
 2. The parties shall confer and consult with each other and shall agree upon what expenses for each child the funds in that child's account and/or trust shall be used to pay.
 3. Each party shall be entitled to duplicates of all statements incident to each child's custodian account and/or trusts. The husband and wife shall cooperate in advising each financial institution where the accounts are located to forward said duplicate statements to the appropriate party forthwith.
LIABILITIES
 1. Each party shall be responsible for the liabilities reflected on their respective affidavits.
 2. Each party shall be responsible for one half of the fee of the attorney for the minor children, Attorney John Mager, Milford, Connecticut.
CT Page 3724
INCOME TAX
 1. The plaintiff shall be entitled to claim the three minor children as defendants for income tax purposes, Federal and State. This provision shall be modifiable.
 2. The husband shall indemnify and save the wife harmless from any liabilities arising from any joint Federal or State income tax returns which have been filed.
COUNSEL FEES
Each party shall be responsible for their respective attorney's fees and expert fees.
COPPETO, J.